38 F.3d 1100
 LAS VEGAS NIGHTLIFE, INC., d/b/a Club Tabu; G. Group, Inc.,
d/b/a Black Garter; Springston, Inc., d/b/a Nasty's; G of
L Corp., d/b/a Chaser's; Las Vegas Afterdark, Inc., d/b/a
Night Gallery; Smart Alley, Inc., d/b/a Alley's; and Ascot
Promotions, Inc., d/b/a Black Dominion, Plaintiffs-Appellants,
v.
CLARK COUNTY, NEVADA, et al., Defendants-Appellees.
 Nos. 93-15864, 93-16184.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 14, 1994.
Decided Oct. 26, 1994.
 
 Allen Lichtenstein and Janet Trost, Las Vegas, NV, for plaintiffs-appellants.
 Charles A. Paine, Deputy Dist. Atty., and Michael L. Douglas, Deputy Dist. Atty., Las Vegas, NV, for defendants-appellees.
 Appeals from the United States District Court for the District of Nevada.
 Before: CHOY and NOONAN, Circuit Judges, and MARQUEZ*, District Judge.
 NOONAN, Circuit Judge:
 
 
 1
 The plaintiff adult nightclubs [the "Clubs"], doing business under the variety of colorful names indicated in the caption of this case, sought declaratory and injunctive relief against Clark County, Nevada, and John Moran, the Sheriff of Clark County, the defendants. The Clubs alleged that an ordinance enacted by the County on November 19, 1991, unconstitutionally regulated their business. From an unfavorable judgment of the district court, the plaintiffs appeal. We affirm the district court.
 
 PROCEEDINGS
 
 2
 In their third amended complaint, filed July 11, 1992, the Clubs attacked the ordinance for violation of the Due Process Clause, the Equal Protection Clause, and the First Amendment.
 
 
 3
 The County introduced the legislative material that had led the County Commission to adopt the ordinance. This material tended to show that there were persistent problems concerning what the ordinance described as "adult night clubs." A number of customers (all male) complained that they were brought to the Clubs by taxi drivers (tipped by the Clubs) who indicated the Clubs would furnish "girls and booze" to the customers; that the customers were induced by female attendants to purchase drinks at prices that were exorbitant ($500 to $1200 per bottle), which the customers paid in the expectation that the attendants would provide sexual acts; and that these expectations were frustrated so that the customers had simply been swindled out of the large sums they paid for the drinks. The material before the County Commission suggested that on a number of occasions the adult night clubs had played a variant of the badger game on the duped customers.
 
 
 4
 John Sweeney, the "chief operating officer" of the Clubs, provided an affidavit describing the "nonalcoholic night club business" of the Clubs. He stated that the premises of each contained signs stating that prostitution was illegal in Clark County and signs stating that no alcoholic beverages were served. He further swore that the "private rooms" of the Clubs were not allowed "to be fully closed. All of these rooms have just four inch wide imitation leather slats covering the openings that allow only a small measure of privacy, while allowing visual and aural monitoring of the conduct in the rooms by other employees." He added that there was "constant monitoring of the rooms when occupied by hostesses and customers by other employees to assure that no illegal activity occurs." The same declarations were sworn to by Terry Gordon, who identified himself as "the chief executive officer" of all the plaintiffs.
 
 
 5
 The defendants took the depositions of Sweeney and Gordon. According to Sweeney, the "theme of the Clubs" is "comfortable relaxing atmosphere for generally single men. I refer to it, if I may, as king for a day." Gordon explicitly testified that the Clubs provided "no entertainment." Sweeney said that cab drivers were paid tips to bring customers to the Clubs. The women that work in them were described by Sweeney as "hostesses." He said that they were considered to be "independent contractors" and, therefore, were not paid a salary but compensated only by tips from the customers. The plaintiffs' attorney was present at this deposition but did not conduct any cross-examination, so that only these facts were brought out as to the business of the plaintiffs.
 
 
 6
 The plaintiffs and the defendants each moved for summary judgment. The district court found certain sections of the ordinance invalid and sustained the rest. The plaintiffs appeal, alleging that the ordinance is "over-broad" and an impermissible infringement on their right to free speech. They rely only on the Free Speech Clause of the First Amendment.
 
 
 7
 The Clubs challenge the decision of the district court as to the following six provisions of the ordinance:
 
 
 8
 1) Sec. 6.170.060(d)(1) prohibiting the County from issuing a license if the applicant or any stockholder or partner has been convicted within the past five years of any crime involving moral turpitude, embezzlement, or fraud.
 
 
 9
 2) Sec. 6.170.090(h) requiring that all communication between attendants and patrons shall take place in an area visible immediately upon entrance into the club.
 
 
 10
 3) Sec. 6.170.050(b)(7)(A-C) requiring applicants and anyone with a financial interest in the club to disclose any past criminal convictions, past denials of business licenses, and any history of employment by swingers clubs, escort services, brothels, or adult nightclubs.
 
 
 11
 4) Sec. 6.170.090(p) banning nudity in the Clubs.
 
 
 12
 5) Sec. 6.170.030(a) defining Adult Nightclub.
 
 
 13
 6) Sec. 6.170.080(d) requiring the County to issue an attendant/server work permit within ten days of application.
 
 ANALYSIS
 
 14
 The County has amended the ordinance to cure the defects found by the district court. On appeal we review the ordinance as amended. IDK, Inc. v. Clark County, 836 F.2d 1185, 1187 (9th Cir.1988). In order to assert a First Amendment claim of freedom of speech the plaintiffs must show that the County's regulation reaches "a substantial amount of constitutionally protected conduct." Id. at 1196. It is "the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies." Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, n. 5, 104 S.Ct. 3065, n. 5, 82 L.Ed.2d 221 (1984). Although counsel in oral argument contended that "exotic dancing" was done by the hostesses, no evidence in the record supports this assertion, and it is directly contradicted by Gordon's affidavit that the Clubs offered "no entertainment." The evidence offered by the plaintiffs, consisting solely in the affidavits and depositions of the chief executive officer and chief operating officer, does not show that the Clubs engage in a substantial amount of conduct that could be considered free speech protected by the United States Constitution.
 
 
 15
 The legislative material introduced by the County, while admissible to show that the County had a legitimate motive in adopting the Ordinance, was inadmissible hearsay to the extent it was offered to show the conduct of the Clubs. F.R.Civ.P. 56(e); 6 Moore's Federal Practice p 56.22 (2d ed.) at 743-46. The plaintiffs' evidence shows only commercial activities conducted by women, not employed by the Clubs, who depend on tips from the customers for compensation. These activities occur either in a completely public area or in the so-called private rooms, which according to the plaintiffs' own evidence allow visual and aural monitoring and are in fact constantly monitored by other employees. "While it is possible to find some kernel of expression in almost every activity a person undertakes ... such a kernel is not sufficient to bring the activity within the protection of the First Amendment." Dallas v. Stanglin, 490 U.S. 19, 25, 109 S.Ct. 1591, 1595, 104 L.Ed.2d 18 (1988).
 
 
 16
 Ordinary commercial activity of the kind conducted by the Clubs is subject to governmental regulation without offending the First Amendment. The Supreme Court offered a number of examples of such regulation in Ohralik v. Ohio State Bar Assn., 436 U.S. 447, 456-57, 98 S.Ct. 1912, 1918-19, 56 L.Ed.2d 444 (1978): the exchange of information about securities, SEC v. Texas Gulf Sulphur Co., 401 F.2d 833 (CA2 1968), cert. denied, 394 U.S. 976 [89 S.Ct. 1454, 22 L.Ed.2d 756] (1969), and corporate proxy statements, Mills v. Electric Auto-Lite Co., 396 U.S. 375 [90 S.Ct. 616, 24 L.Ed.2d 593] (1970), the exchange of price and production information among competitors, American Column & Lumber Co. v. United States, 257 U.S. 377 [42 S.Ct. 114, 66 L.Ed. 284] (1921), and employers' threats of retaliation for the labor activities of employees, NLRB v. Gissel Packing Co., 395 U.S. 575, 618 [89 S.Ct. 1918, 1942, 23 L.Ed.2d 547] (1969). See Paris Adult Theatre I v. Slaton, 413 U.S. 49, 61-62 [93 S.Ct. 2628, 2637, 37 L.Ed.2d 446] (1973). The regulation of the Clubs by the County is not different in kind or degree from this kind of regulation aimed at promoting full disclosure or avoiding fraud or overreaching.
 
 
 17
 The plaintiffs also press an "over-breadth" claim. However, a challenge on the basis of over-breadth based on the ordinance's impact on the rights of other business associations cannot be made in a commercial context. IDK, Inc. v. Clark County, 836 F.2d 1185 at 1197; see Bates v. State Bar of Arizona, 433 U.S. 350, 380-81, 97 S.Ct. 2691, 2707-08, 53 L.Ed.2d 810 (1977).
 
 
 18
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Alfredo C. Marquez, Senior United States District Judge for the District of Arizona, sitting by designation