BILL LOCKYER Attorney General THOMAS S. LAZAR Deputy Attorney General
THE HONORABLE RUDY BERMUDEZ, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following questions:
1. May the Legislature prohibit the prescribing of drugs by clinical psychologists who have received training with respect to the use of prescription drugs under guidelines adopted pursuant to the Legislature's directive, when at the same time the Legislature has granted prescription authorization to certain other health care professionals?
2. May the Board of Psychology authorize by regulation the prescribing of psychotropic medications by clinical psychologists who have received training with respect to the use of prescription drugs under guidelines adopted pursuant to the Legislature's directive?
CONCLUSIONS
1. The Legislature may prohibit the prescribing of drugs by clinical psychologists even though they have received training with respect to the use of prescription drugs under guidelines adopted pursuant to the Legislature's directive, when at the same time the Legislature has granted prescription authorization to certain other health care professionals.
2. The Board of Psychology may not authorize by regulation the prescribing of psychotropic medications by clinical psychologists who have received training with respect to the use of prescription drugs under guidelines adopted pursuant to the Legislature's directive.
ANALYSIS
The Legislature has enacted a comprehensive statutory scheme, the Psychology Licensing Law (Bus. Prof. Code, §§2900-2999)[1], to regulate the practice of psychology. The legislative scheme is administered by the Board of Psychology ("Board"). (NAAP v. California Bd. of Psychology (9th Cir. 2000) 228 F.3d 1043, 1047, cert. denied, 532 U.S. 972 (2001).) Section 2903 describes the practice of psychology as follows:
". . . The practice of psychology is defined as rendering or offering to render for a fee to individuals, groups, organizations or the public any psychological services involving the application of psychological principles, methods, and procedures of understanding, predicting, and influencing behavior, such as the principles pertaining to learning, perception, motivation, emotions, and interpersonal relationships; and the methods and procedures of interviewing, counseling, psychotherapy, behavior modification, and hypnosis; and of constructing, administering, and interpreting tests of mental abilities, aptitudes, interests, attitudes, personality characteristics, emotions, and motivations.
"The application of these principles and methods includes, but is not restricted to: diagnosis, prevention, treatment, and amelioration of psychological problems and emotional and mental disorders of individuals and groups.
"Psychotherapy within the meaning of this chapter means the use of psychological methods in a professional relationship to assist a person or persons to acquire greater human effectiveness or to modify feelings, conditions, attitudes and behavior which are emotionally, intellectually, or socially ineffectual or maladjustive.
". . . . . . . . . . . . . . . . . . . . .
In addition, the Legislature has expressly prohibited psychologists from performing certain services. (§§ 2903.1,2904.) of particular relevance here is section2904, which provides:
"The practice of psychology shall not include prescribing drugs, performing surgery or administering electro-convulsive therapy."
The two questions presented for analysis concern whether the prohibition against prescribing drugs contained in section 2904 is constitutional and whether the Board has administrative authority to allow certain psychologists to prescribe drugs. We conclude that the statute is constitutional and that the Board may not adopt a regulation that is in conflict with the statute.
1. Constitutionality of Section 2904
Although the Legislature has prohibited psychologists from prescribing drugs, it has authorized them to be trained in the "[k]nowledge of the psychopharmacology of classes of drugs commonly used to treat mental disorders," among other courses of study. Section 2914.3
states with respect to the doctorate degree program that a psychologist must complete in order to be licensed by the Board:
"(a) The board shall encourage institutions that offer a doctorate degree program in psychology to include in their biobehavioral curriculum, education and training in psychopharmacology and related topics including pharmacology and clinical pharmacology.
"(b) The board shall develop guidelines for the basic education and training of psychologists whose practices include patients with medical conditions and patients with mental and emotional disorders, who may require psychopharmacological treatment and whose management may require collaboration with physicians and other licensed prescribers. In developing these guidelines for training, the board shall consider, but not be limited to, all of the following:
"(1) The American Psychological Association's guidelines for training in the biological bases of mental and emotional disorders.
"(2) The necessary educational foundation for understanding the biochemical and physiological bases for mental disorders.
"(3) Evaluation of the response to psychotropic compounds, including the effects and side effects.
"(4) Competent basic practical and theoretical knowledge of neuroanatomy, neurochemistry, and neurophysiology relevant to research and clinical practice.
"(5) Knowledge of the biological bases of psychopharmacology.
"(6) The locus of action of psychoactive substances and mechanisms by which these substances affect brain function and other systems of the body.
"(7) Knowledge of the psychopharmacology of classes of drugs commonly used to treat mental disorders.
"(8) Drugs that are commonly abused that may or may not have therapeutic uses.
"(9) Education of patients and significant support persons in the risks, benefits, and treatment alternatives to medication.
"(10) Appropriate collaboration or consultation with physicians or other prescribers to include the assessment of the need for additional treatment that may include medication or other medical evaluation and treatment and the patient's mental capacity to consent to additional treatment to enhance both the physical and the mental status of the persons being treated.
"(11) Knowledge of signs that warrant consideration for referral to a physician.
"(c) This section is intended to provide for training of clinical psychologists to improve the ability of clinical psychologists to collaborate with physicians. It is not intended to provide for training psychologists to prescribe medication. Nothing in this section is intended to expand the scope of licensure of psychologists."[2]
Section 2914.1 additionally states:
"The board shall encourage every licensed psychologist to take a continuing education course in geriatric pharmacology as a part of his or her continuing education."
Section 2914.2 provides:
"The board shall encourage licensed psychologists to take continuing education courses in psychopharmacology and biological basis of behavior as part of their continuing education."
Finally, in order to become a licensed psychologist, an applicant must complete "training in the detection and treatment of alcohol and other chemical substance dependency" (§ 2914, subd. (e)) that covers "[p]sychopharmacology and the interaction of various classes of drugs, including alcohol . . . as those subjects relate to alcoholism and chemical dependency" (Cal. Code Regs., tit. 16, § 16:1382.3, subd. (d)(4)).[3]
The Board's guidelines adopted pursuant to section 2914.3
are "to provide for training of clinical psychologists to collaborate with physicians." (§ 2914.3, subd. (c).) The Board has adopted the following guidelines:
"A program of didactic courses to prepare psychologists mentioned in section 2914.3 (a) of the Business and Professions Code should be an organized program of instruction. The program should have appropriate faculty and facilities for the didactic training and should be from a regionally accredited institution of higher learning. Finally, the program should include, at a minimum, one course from each of the following-core content areas:
"I. Neurosciences
"II. Pharmacology and Psychopharmacology
"III. Physiology and Pathophysiology
"IV. Physical and Laboratory Assessment
"V. Clinical Pharmacotherapeutics
"While suggesting coursework to meet basic educational academic requirements, we recognize that: training in collaborative consultation with physicians, including indicators for referral; educational consultation with patients and families, including information on drugs that are commonly abused and potential therapeutic uses; risks, benefits and treatment alternatives to medication, and indications for physician referral are an implicit part of the practice of psychology."
Some clinical psychologists in California may thus have extensive training with respect to the use of prescription drugs, which training they have received pursuant to guidelines adopted by the Board as directed by the Legislature. Yet no psychologist is allowed by the Legislature to prescribe drugs. (§ 2904.)
In contrast, many other health care professionals are permitted to prescribe drugs within their scope of practice. Dentists (§1625), podiatrists (§ 2472) and certified optometrists (§§ 3041,3041.2, 3041.3) are authorized to use drugs within the scope of their practice in the treatment of their patients. Nurse practitioners (§§ 2834-2837) and certified nurse-midwives (§§2746-2746.8) are authorized to furnish or order drugs pursuant to standardized procedures while under physician supervision. (§§ 2836.1, 2746.51.) Physician assistants (§§ 3500-3546) may order drugs pursuant to protocols or prior physician approval and subject to physician supervision. (§ 3502.1.)
These other health care professionals have received special training in prescribing drugs. Dentists must complete an educational program in "[a]nesthesia, sedation and pain and anxiety control." (§§1628, 1631; Regs. 1024, 1024.1, subd. (c).) Podiatrists are required to complete training in local anesthesia and pharmacology, including materia medica and toxicology. (§§2483, 2484.) Optometrists must complete training related to the diagnosis, treatment and management of ocular disease in order to use or prescribe therapeutic pharmaceutical agents. (§§ 3041, 3041.3.) Nurse practitioners and nurse-midwives must first be licensed as registered nurses (Regs. 1482, subd. (a) [nurse practitioners], 1460, subd. (a)(1)(A) [nurse-midwives]) and, having completed the education and training in pharmacology required of all registered nurses (§2736; Regs. 1426, subd. (d)), must complete additional training and education in pharmacology to qualify for their advanced certificate (Regs. 1484, subd. (d)(12)(I) [nurse practitioners], 1462, subd. (b)(1)(A) [nurse midwives]). Physician assistants are required to complete training in therapeutics, including pharmacology. (§3514, subd. (c); Regs. 1399.53 1, subd. (b)(8).)
For our purposes, we may assume that some clinical psychologists have received extensive training with respect to the use of prescription drugs. Is the Legislature's prohibition against all psychologists prescribing drugs constitutional? Are clinical psychologists who have received extensive training denied the equal protection of the laws under the state (Cal. Const., art. 1, § 7) or federal (U.S. Const., 14th Amend., § 1) Constitution in light of the Legislature's authorization for certain other health care professionals to prescribe drugs?
Essentially, under both state and federal Constitutions, "the equal protection clause requires that those similarly situated not be treated differently unless the disparity is justified." (Board of Supervisors v. Local Agency Formation Coin. (1992) 3 Cal.4th 903, 914; accord, Kenneally v. Medical Board, supra, 27 Cal.App.4th at p. 495.) Hence, the equal protection clause does not preclude the enactment of a statute that treats different professions differently where the two professions are not "similarly situated." In Kenneally v. Medical Board, supra,27 Cal.App.4th 489, the court observed:
"States are granted the power to regulate professions. [Citation.] The state may regulate different professions differently. It may resolve identical problems with respect to different professions at the same time in the same manner, or determine to regulate different professions differently. [Citation.]" (Id. at pp. 499-500; see Landau v. Superior Court, supra, 81 Cal.App.4th at p. 210.)
More recently, in People v. Pottorff (1996) 47 Cal.App.4th 1709, 1715, the court reviewed the applicable constitutional principles:
"The basic principle of equal protection is "that persons similarly situated with respect to the legitimate purpose of the law [must] receive like treatment.' [Citation.] This principle, however, "does not require things which are different in fact or opinion to be treated in law as though they were the same.' [Citation.] "Neither the Fourteenth Amendment of the Constitution of the United States nor the California Constitution (art. I, § 7; art. IV, § 16) precludes legislative classification with respect to persons who are different. [Citation.]' [Citation.] Accordingly, "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. [Citation.]' [Citation.]"
Applying these principles to the prohibition against prescribing drugs contained in section 2904, we find that the prohibition is constitutional. The clinical psychologists in question are not similarly situated with respect to the other health care professionals who have been granted drug prescribing authority. First, the training that a clinical psychologist may receive concerning the use of prescription drugs "is intended . . . to improve the ability of clinical psychologists to collaborate with physicians" and "is not intended to provide for training psychologists to prescribe medication." (§2914.3, subd. (c).) In contrast, the training in prescribing drugs received by the other health care professionals is directed at and focused upon the prescribing of medications within their respective scope of practice. This difference in the purposes of the training affects the training itself. It must be conceded that clinical psychologists do not receive the identical training in prescribing drugs that, for example, dentists receive.
Not only is the training different, the drugs themselves must necessarily be different due to the difference in the scope of practice. For example, what drugs an optometrist may prescribe would not likely benefit a patient of a clinical psychologist. Significantly, in this regard, we note that another health care professional is authorized to prescribe medications that would benefit the patients of a clinical psychologist. A physician, and particularly a psychiatrist, is authorized to prescribe drugs (§ 2051) that would benefit a clinical psychologist's patients. However, it is beyond dispute that the training of a clinical psychologist in the use of prescription drugs is not as extensive as that of a physician.
Accordingly, clinical psychologists are not similarly situated with respect to other health care professionals who are permitted to prescribe drugs. Their scope of practice is different causing differences to exist in both their training and the types and uses of the drugs involved.
In NAAP v. California Bd. of Psychology, supra, 228 F.3d 1043, the court addressed a similar constitutional issue. The plaintiffs were psychoanalysts who did not meet the licensing requirements for being psychologists but who had extensive training in psychoanalysis. They pointed out that other states had less stringent licensing schemes for psychoanalysts than California and that the Legislature had authorized other professionals with less training than psychologists, including family counselors and social workers, to provide counseling. The court responded to their arguments by stating that "[i]t is not irrational for the Legislature to progress one step, or one profession at a time" and "[i] t simply is not the function of the courts to tell California how to craft its legislation." (Id. at p. 1053.) Likewise here, the Legislature may "progress . . . one profession at a time" without violating the equal protection clause of either the state or federal Constitution. Simply put, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." (Tigner v. Texas (1940) 310 U.S. 141, 147.)
We therefore conclude in answer to the first question that the drug prescribing prohibition contained in section 2904 passes constitutional muster. (Cf. National Association for the Advancement of Psychoanalysis v. California Board of Psychology, supra, 228 F.3d at pp. 1049-1054.) The Legislature may prohibit the prescribing of drugs by clinical psychologists even though they have received training with respect to the use of prescription drugs under guidelines adopted pursuant to the Legislature's directive, when at the same time the Legislature has granted prescription authorization to certain other health care professionals.
2. Adoption of Administrative Regulations
The second question presented is whether the Board has the authority to adopt regulations authorizing clinical psychologists to prescribe psychotropic medications if they have received extensive training with respect to the use of prescription drugs.[4]
The rules governing the adoption of administrative regulations are clear. "[I]t is well settled that administrative agencies have only the powers conferred on them, either expressly or by implication, by Constitution or statute. [Citation.]" (American Federation of Labor v. Unemployment Ins. Appeals Bd. (1996) 13 Cal.4th 1017, 1042.) "Where a statute empowers an administrative agency to adopt regulations, such regulations "must be consistent, not in conflict with the statute, and reasonably necessary to effectuate its purpose.' [Citations.]" (Woods v. Superior Court (1981) 28 Cal.3d 668, 679.) "To be valid, such administrative action must be within the scope of authority conferred by the enabling statute. [Citations.]" (Association for Retarded Citizens v. Department of Developmental Services (1985) 38 Cal.3d 384, 391.)" Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations. [Citations.]" (Morris v. Williams (1967) 67 Cal.2d 733, 748.)
Since the prohibition against prescribing drugs contained in section2904 is constitutional, it follows that a regulation authorizing clinical psychologists to prescribe psychotropic medications would conflict with the statutory prohibition. Such an administrative regulation would impermissibly alter and enlarge the scope of the practice of psychology as defined by the Legislature in section2903 and would thus be void even though the clinical psychologists may have extensive training with respect to the use of prescription drugs. (Cf. Crees v. California State Board of Medical Examiners (1963) 213 Cal.App.2d 195, 209-2 10.)
We conclude in answer to the second question that the Board may not authorize by regulation the prescribing of psychotropic medications by clinical psychologists who have received training with respect to the use of prescription drugs under guidelines adopted pursuant to the Legislature's directive.
[1] All further statutory references are to the Business and Professions Code unless otherwise indicated.
[2] "Clinical psychologists" have had two years of clinical experience. (Health Saf. Code, § 1316.5, subd. (d).) All psychologists are licensed by the Board, have a doctorate degree in psychology, with two years of supervised professional experience, have passed an examination administered by the Board, and have taken certain other course work. (§ 2914; NAAP v. California Bd. of Psychology, supra, 228 F.3d at p. 1047.)
[3] All further references to title 16 of the California Code of Regulations are by regulation number only.
[4] A "psychotropic drug" has been described by the Legislature in Penal Code section 3500, subdivision (c), as follows: ""Psychotropic drug' means any drug that has the capability of pharmacological action. Such drugs include, but are not limited to, antipsychotic, antianxiety, sedative, antidepressant, and stimulant drugs. Psychotropic drugs also include mind-altering and behavior-altering drugs which, in specified doses, are used to alleviate certain physical disorders, and drugs which are ordinarily used to alleviate certain physical disorders but may, in specified dosages, have mind-altering or behavior-altering effects."