275 F.3d 812 (9th Cir. 2002)
 JEFFREY L. RUSSELL, PLAINTIFF-APPELLANT
v.
PROCTOR R. HUG; DAVID EZRA; ROBERT C. BROOMFIELD; ROBERT E. COYLE; LLOYD GEORGE; MICHAEL D. HAWKINS; MICHAEL HOGAN; JUDITH KEEP; THOMAS NELSON; JOHN NOONAN; LINDA RIEGLE; PAMELA ANN RYMER; MARY M. SCHROEDER; SANDRA SNYDER MARILYN HALL PATEL, CHIEF JUDGE; CHARLES BREYER; MAXINE M. CHESNEY; SUSAN ILLSTON, JUDGE; MARTIN JENKINS; CHARLES A. LEGGE, JUDGE; FERN M. SMITH; VAUGHN R. WALKER, JUDGE; JAMES WARE; RONALD WHYTE; SAUNDRA B. ARMSTRONG; CLAUDIA WILKEN; ELIZABETH D. LAPORTE; JEREMY FOGEL, DEFENDANTS-APPELLEES
 No. 99-16999
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted March 20, 2001
Filed Jan. 4, 2002
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 Joseph R. Giannini, Los Angeles, California, for the plaintiff-appellant.
 Peter J. Smith, Civil Division, Department of Justice, Washington, D.C., for the defendants-appellees.
 Appeal from the United States District Court for the Northern District of California Harold D. Vietor, District Judge, Presiding D.C. No. CV-99-01104-HDV
 Before: J. Clifford Wallace, William C. Canby, Jr., and A. Wallace Tashima, Circuit Judges.
 
 CANBY, Circuit Judge
 
 1
 This appeal presents the question whether a federal district court, in its Criminal Justice Act Plan, may require members of its indigent defense panel to be members not only of the district court's own bar, but also of the State Bar of California. We uphold the requirement.
 
 Background
 
 2
 The Criminal Justice Act, 18 U.S.C. §§ 3006A(a), authorizes each federal district court to "place in operation throughout the district a plan for furnishing representation for [criminal defendants who are] financially unable to obtain adequate reppresentation." Pursuant to this statute, the United States District Court for the Northern District of California issued, and the Ninth Circuit Judicial Council approved, General Order 2 ("GO2"). GO2 sets forth the Criminal Justice Act Plan for the Northern District. The Plan directs the Chief Judge of the District to appoint members of an Administration Committee, which is responsible for "establish[ing], maintain[ing], and administer[ing] a panel of private attorneys " who will represent indigent criminal defendants in the Northern District. GO2, §§ III(A). Among other requirements, members of the Indigent Defense Panel "must be members in good standing of the Bar of [the Northern District of California] and of the State Bar of California." GO2, §§ III(C).
 
 
 3
 Plaintiff Jeffrey Russell is a member of the Northern District of California Bar, but is not a member of the State Bar of California. Although the Northern District of California currently conditions membership in its Bar on membership in the State Bar of California, Russell is one of a number of lawyers who have been "grandfathered" into the Northern District California Bar from a time in which membership in the Northern District did not depend on membership in the California Bar.[1] Russell's complaint alleges that he has sixteen years experience prosecuting federal criminal cases as an Assistant United States Attorney, including six years in the Northern District of California.
 
 
 4
 When Russell applied for membership on the Northern District's Indigent Defense Panel, his application was denied, as GO2 requires, on the ground that he is not a member of the California Bar. Russell then filed this action against the judges of the district court and the members of the Ninth Circuit Judicial Council, contending that GO2 contravenes various statutes and violates his constitutional rights. The district court dismissed the complaint for failure to state a claim, see Fed. R. Civ. P. 12(b)(6), and denied leave to amend.[2]
 
 
 5
 We have jurisdiction over the appeal pursuant to 28 U.S.C. §§ 1291. We review de novo a Rule 12(b)(6) dismissal. Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998)
 
 Discussion
 
 6
 In his attempt to invalidate GO2, Russell raises ten contentions. He argues that GO2 violates:
 
 
 7
 1) 28 U.S.C. §§ 2071;
 
 
 8
 2) 21 U.S.C. §§ 848(q)(5), (6).
 
 
 9
 3) 28 U.S.C. §§ 332(d)(1);
 
 
 10
 4) 28 U.S.C. §§ 2072;
 
 
 11
 5) Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000, et. seq.;
 
 
 12
 6) The Equal Protection Component of the Fifth Amendment;
 
 
 13
 7) The "Right and Justice" Standard under this Court's "Supervisory Authority";
 
 
 14
 8) The Privileges and Immunities Clause of Article IV, Section 2;
 
 
 15
 9) The "Privileges or Immunities" Clause of the Fourteenth Amendment;
 
 
 16
 10) The First Amendment.
 
 
 17
 We conclude that none of these arguments has merit. We address Russell's contentions in turn.
 
 
 18
 1. GO2 Does Not Violate 28 U.S.C. §§ 2071.
 
 
 19
 Russell contends that the district court's Criminal Justice Act Plan is a "rule" within the meaning of 28 U.S.C. §§ 2071, and that it is invalid because the district court failed to give public notice and provide an opportunity for comment as required by §§ 2071(b). We conclude, however, that the Plan is not a "rule" governed by §§ 2071.
 
 
 20
 It is true that Congress amended §§ 2071 in 1988 to provide that all rules of a district court must be promulgated under §§ 2071. See U.S.C. §§ 2071(f). But that amendment adds nothing to Russell's argument; it is still necessary to determine whether the Plan is a "rule." We conclude that it is not.
 
 
 21
 Well before Congress amended §§ 2071 to make it the exclusive avenue for the promulgation of district court "rule[s]," it had enacted the Criminal Justice Act, which provided in 18 U.S.C. §§ 3006A the means for adopting a Criminal Justice Plan to furnish representation for indigent defendants. This statute sets out in considerable detail the requisite components of a Criminal Justice Plan, the means of selecting and paying counsel, the requirements for provision of other necessary services (such as experts), authority for the establishment of Federal Public Defender and Community Defender Organizations, and other matters. There is no requirement of public notice and an opportunity for comment.
 
 
 22
 When Congress amended 28 U.S.C. §§ 2071 to make it the exclusive authority for the promulgation of any"rule" of the district court, it indicated no intent to amend or repeal §§ 3006A. Nothing in the very general provisions of §§ 2071 suggests that it is intended to substitute for or partially replace the detailed and specific provisions of §§ 3006A regarding a Criminal Justice Act Plan for provision of counsel for indigent defendants.[3] To accept Russell's contention, we would have to conclude that Congress, by the very general terms of §§ 2071, impliedly repealed, in whole or in part, the specific provisions of §§ 3006A. All presumptions are against such a conclusion, and we decline to embrace it. See , e.g., Hagen v. Utah, 510 U.S. 399, 416 (1994) (repeals by implication are disfavored); Morton v. Mancari, 417 U.S. 535, 550-51 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.").
 
 
 23
 2. GO2 Is Not Inconsistent with 21 U.S.C.§§ 848(q)(5) and (6).
 
 
 24
 Russell contends that GO2 is inconsistent with subsections (5) and (6) of 21 U.S.C. §§ 848(q), which set forth requirements for counsel in federal death penalty cases. Among other things, subsection (5) requires that at least one attorney "have been admitted to practice in the court in which the prosecution is to be tried for not less than five years." Subsection (6) requires that at least one attorney appointed after judgment "must have been admitted to practice in the court of appeals for not less than five years."
 
 
 25
 We see no inconsistency between these requirements and those of GO2. Section 848(q) does not state that the requirements it sets forth are exclusive; they are far more reasonably understood as minimum requirements for death penalty cases. For example, §§ 848(q) does not expressly require any attorney to have been admitted to any state bar, or to have passed a bar examination anywhere. Of course, an attorney admitted to and experienced in a federal court will certainly have done both, but that fact simply illustrates that federal courts may add requirements to those expressly set forth in §§ 848(q). Section 848(q) is no obstacle to the validity of GO2.
 
 
 26
 3. GO2 Does Not Violate 28 U.S.C. §§ 332(d)(1).
 
 
 27
 Russell's next argument is that GO2 violates 28 U.S.C. §§ 332(d)(1), which provides, among other things, that "[e]ach judicial council shall make all necessary and appropriate orders for the effective and expeditious administration of justice within its circuit." It provides further that "[a]ny general order relating to practice and procedure" issued by a judicial council "shall be made or amended only after giving appropriate public notice and an opportunity for comment. " This statute and its notice and comment requirement apply, however, only to orders that the Judicial Council itself makes, not to orders made by the district court. See §§ 332(d)(1). In this case, the Judicial Council did not itself make an order, nor did it act pursuant to §§ 332(d)(1) when it approved the district court's plan.[4] Instead, it acted in compliance with 18 U.S.C. §§ 3006A, which requires that the Judicial Council "approve " the district court's plan. As a consequence, §§ 332(d)(1) by its terms does not apply to the action taken by the Judicial Council here.
 
 
 28
 There is good reason why Congress may have elected not to subject "approvals" made by the Judicial Council pursuant to 18 U.S.C. §§ 3006A to the same public notice requirement as "orders" made by the Judicial Council pursuant to §§ 332(d)(1). The delegation of power to the Judicial Council under 18 U.S.C. §§ 3006A is much narrower than the delegation of power to it under §§ 332(d)(1); the Council under §§ 3006A can only "approve" one type of very specific "plan" created by the district court. Congress could easily have concluded that there was no need to place a check on the power exercised by the Judicial Council under §§ 3006A, while continuing to require the check of notice and comment under §§ 332(d)(1). In any event, Congress did not write a notice and comment requirement into §§ 3006A, and that fact is sufficient to defeat Russell's argument.
 
 
 29
 4. GO2 Does Not Violate 28 U.S.C. §§ 2072.
 
 
 30
 Russell contends that GO2 violates 28 U.S.C. §§ 2072(b), which provides that the "rules" authorized by subsection 2072(a) "shall not abridge, enlarge or modify any substantive right." He argues that the right to practice law is a "privilege" conferred under the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution, and that GO2 "abridges" this right by preventing him from serving on the Indigent Defense Panel.
 
 
 31
 This argument is utterly without merit. First, 28 U.S.C. §§ 2072(b) applies only to "rules of practice and procedure and rules for evidence" prescribed by the Supreme Court, see §§ 2072(a), which GO2 is not. Second, as we explain below, GO2 does not violate the "Privileges and Immunities" Clause, and therefore does not "abridge" a substantive right.
 
 
 32
 5. GO2 Does Not Violate Title VII of the 1964 Civil Rights Act.
 
 
 33
 Russell argues that GO2's State Bar membership requirement violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 et seq. This is a frivolous argument. Title VII prohibits employment practices that discriminate on the basis of race, color, religion, sex, or national origin. 42 U.S.C. §§§§ 2000e-2(a) (describing unlawful employment practices in general); 2000e-16(a) (describing prohibited discriminatory practices in employment by the federal government). Even if it is assumed that an employment practice is involved, Russell has not alleged discrimination on any of these bases.
 
 
 34
 6. GO2 Does Not Violate the Equal Protection Component of the Fifth Amendment.
 
 
 35
 Russell contends that GO2 irrationally discriminates in favor of lawyers who are members of the State Bar of California, in violation of the Equal Protection component of the Fifth Amendment. We reject this contention because GO2's California State Bar membership requirement is rationally related to two legitimate governmental objectives.[5]
 
 
 36
 First, GO2's requirement that a lawyer be a member of the California Bar is rationally related to the Northern District of California's interest in ensuring a uniform minimum level of competence for lawyers provided to indigent criminal defendants. Because there are more than fifty bar examinations in the United States, the minimum standard of competence required to be a "lawyer" arguably varies considerably among the states. Requiring membership in the California Bar allows the Northern District of California to be sure that all attorneys assigned to its Indigent Defense Panel are at least capable enough to clear the standard required in California--a standard with which the Northern District is familiar, and a standard that is quite possibly higher than that of many other states.[6] Cf. Giannini v. Real , 911 F.2d 354, 358 (9th Cir. 1990) (holding that "allowing California to set its own bar examination standards is rationally related to the legitimate government need to ensure the quality of attorneys within the state").
 
 
 37
 Russell contends that, in his case, the competence justification is incapable of providing a rational basis for GO2's California Bar membership requirement because the Northern District has already admitted Russell to its bar. Having done this, Russell argues, the Northern District has already acknowledged his competence, thereby making further insistence on a demonstration of competence irrational. Russell also emphasizes his extensive experience in criminal trials in the Northern District.
 
 
 38
 We understand Russell's argument, and sympathize with it, but we must reject it because we are "compelled under rational-basis review to accept . . . generalizations even when there is an imperfect fit between means and ends. " Heller v. Doe, 509 U.S. 312, 321 (1993). Russell's qualifications suggest that he would be fully capable of serving on the Northern District's Indigent Defense Panel, even without membership in the California Bar. But this fact does not refute the proposition that, as a general matter, GO2's California Bar membership requirement could help to ensure a minimum level of acceptable competence for lawyers on the whole.[7] Cf. Giannini, 911 F.2d at 358. Russell's contention that we must consider his personal circumstances when judging the reasonableness of GO2's general requirement of membership in the California Bar is an impermissible attempt to ratchet up our standard of review from rational basis toward strict scrutiny. Cf. Heller, 509 U.S. at 321 ("[a ] classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality")(internal quotations omitted). We reject the attempt and adhere to rational basis review.
 
 
 39
 GO2's requirement that a lawyer be a member in good standing of the California Bar is also rationally related to the Northern District's legitimate interest in policing standards of ethical conduct of the lawyers who practice law on the Indigent Defense Panel. "[M]embership in the California Bar provides the district courts assurance that the character, moral integrity, and fitness of [Indigent Defense Panel members] have been approved after investigation." Giannini, 911 F.2d at 360. Furthermore, the California Bar membership requirement makes discipline easier for the Northern District because the California Bar provides the Northern District with a disciplinary mechanism complementary to its own. See No. Dist. of Cal. Gen. Order No. 46 (Feb. 23, 1999). Cf. Giannini, 911 F.2d at 360 (noting that the California Bar membership requirement for a federal district court bar in California was justified in part because it allowed the district court to bring allegations of professional misconduct to the attention of the California Bar). Thus, even were we to reject the competence rationale for GO2, we would nonetheless be compelled to uphold GO2's California Bar membership requirement.
 
 
 40
 Russell contends that, in actuality, GO2's California bar membership requirement is an attempt to limit competition. Even if this allegation were true, it would not be sufficient to nullify GO2 under an equal protection analysis. To invalidate a law reviewed under the rational basis standard,"the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." Heller, 509 U.S. at 320 (internal quotations and citation omitted). Russell has failed to negate the two rational bases for GO2's California Bar membership requirement, and consequently we reject his equal protection argument.
 
 
 41
 7. Our Inherent Supervisory Power Does Not Extend to GO2.
 
 
 42
 Russell next contends that GO2 does not comport with principles of "right and justice," and that this court should therefore invalidate GO2 pursuant to its "inherent supervisory authority." We do not reach the merits of this contention.
 
 
 43
 We conclude that we have no "supervisory authority" over plans adopted pursuant to the Criminal Justice Act. In the past we have exercised our "supervisory authority" over rules implemented pursuant to 28 U.S.C. §§ 2071. See Giannini, 911 F.2d at 361. But our supervisory authority is not unbounded, and we "may not exercise any supervisory power absent a clear basis in fact and law for doing so." United States v. Gatto, 763 F.2d 1040, 1046 (9th Cir. 1985) (citation omitted). In this case, we lack a "basis in law" to exercise supervisory authority over plans issued pursuant to the Criminal Justice Act because in that Act Congress granted to the Judicial Council a continuing authority to supervise such plans. 18 U.S.C. §§ 3006A(a). The plan may be adopted or modified by the district court only with the approval of the Judicial Council, and the Judicial Council may direct the district court to modify its plan. Id.
 
 
 44
 These provisions make clear that the district court's adoption and modification of a plan under the Criminal Justice Act is an administrative matter, subject to the governance of the Judicial Council. Our jurisdiction to review final judgments of the district courts, conferred by 28 U.S.C. §§ 1291, does not authorize us to engage in supervisory oversight of administrative actions of the district courts. See United States v. Walton, 693 F.2d 925, 926-27 (9th Cir. 1982). Although in reviewing a judgment of the district court we may adjudicate, as we have today, the legality of a provision of the plan when it is challenged by one to whom it is applied, we may not exercise more general supervisory power over the terms and administration of the plan. We therefore reject Russell's invocation of our "general supervisory authority" with regard to the plan.[8]
 
 
 45
 8. GO2 Does Not Violate the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution.
 
 
 46
 Russell maintains that GO2 violates the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution.[9] This argument has no merit. "Discrimination on the basis of out-of-state residency is a necessary element for a claim under the Privileges and Immunities Clause." Giannini, 911 F.2d at 357 (citation omitted). Here, it is doubtful that Russell has standing to raise such a Privileges and Immunities claim because he does not allege that he is not a resident of California. Moreover, there is no discrimination on the basis of state residency: both non-residents and residents must be members in good standing of the California Bar to serve on the Indigent Defense Panel.[10] Because GO2 does not discriminate against Russell on the ground of state citizenship, the Privileges and Immunities Clause is of no aid to him.
 
 
 47
 9. GO2 Does Not Violate the Privileges or Immunities Clause of the Fourteenth Amendment.
 
 
 48
 Russell also argues that GO2 violates the long dormant (but recently revived[11] Privileges or Immunities Clause of the Fourteenth Amendment.[12] One fatal flaw in this argument is that this Clause applies in terms only to actions taken by states, not to those (such as the adoption of GO2) taken by the federal government. Russell's other insurmountable problem is that proof of a violation of the Clause requires, at the least, a showing of interference with a right of national citizenship, such as the right to travel. Thus, states may not discriminate against residents on the ground that they are newly arrived. See Saenz v. Roe, 526 U.S. 489, 506-07 (1999). As we have already pointed out, there is no allegation here that Russell has been treated differently from any other resident of California on such a ground. Cf. Paciulan v. George , 229 F.3d 1226, 1229 (9th Cir. 2000) (rejecting a Privileges or Immunities argument in a case in which plaintiffs, who were residents of California, were treated no differently from any other residents of California). Russell's argument wholly misses the mark.
 
 
 49
 10. GO2 Does Not Violate the First Amendment.
 
 
 50
 Finally, Russell contends that GO2 impermissibly infringes on his First Amendment rights to speech, association, and petition in a public forum. This contention fails in the light of our decision in Paciulan, 229 F.3d at 1230.
 
 
 51
 In Paciulan, two lawyers challenged the constitutionality of a California rule that allowed nonresident attorneys, but not resident attorneys, to obtain pro hac vice status. The lawyers contended that this rule infringed their First Amendment rights in three respects: "[1] by limiting their speech on behalf of their clients; [2] by preventing them from freely associating with clients and other attorneys; and [3] by restricting their ability to petition for redress of grievances." Id. We rejected their contention, noting that under the plaintiffs'"sweeping formulation of the First Amendment, any regulation of bar membership would be deemed unconstitutional," and also observing that "[n]o case has ever suggested that states are constitutionally barred from regulating admission of their respective bars." Id. In this case, Russell in effect raises the same contention that the plaintiffs unsuccessfully argued in Paciulan: that an individual has a First Amendment right to practice law in any way of his choosing, free even of rationally-based regulation. As with the claim in Paciulan, the broadly formulated First Amendment argument here would, if successful, greatly undermine the power of states to regulate bar membership, when this power has been repeatedly recognized and upheld by the courts. See, e.g., Leis v. Flynt, 439 U.S. 438, 442 (1979) ("Since the founding of the Republic, the licensing and regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions."). Consequently, we reject Russell's First Amendment contention.[13]
 
 Conclusion
 
 52
 GO2 does not violate any of the statutes invoked by Russell, nor does it violate his constitutional rights. Accordingly, the judgment of the district court is
 
 
 53
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 On September 1, 1995, the Northern District amended its Local Rule 11 to condition membership in the Northern District of California Bar on membership in the State Bar of California. Prior to this amendment, membership in the State Bar of California was not a requirement for admission to the Northern District.
 To ease the burden on Northern District members who were not members of the California Bar, the amendment provided that attorneys who were active members in good standing of the Northern District Bar prior to the adoption of the State-Bar requirement could remain members of the Northern District Bar. Russell qualified under this provision.
 
 
 [2]
 Russell does not argue on appeal that it was error for the district court to deny leave to amend.
 
 
 [3]
 Congress in drafting the CJA clearly understood "plans" and "rules" to mean different things, and used the terms accordingly. See §§ 3006A(h) ("The Judicial Conference of the United States may, from time to time, issue rules and regulations governing the operation of plans formulated under this section") (emphasis added).
 
 
 [4]
 Section 322 recognizes a distinction between the judicial council's "making" an order and its "approving" an order. Cf. §§ 332(d)(1) (referring to the process by which the Judicial Council makes its own orders) with §§ 332(d)(4) (referring to the process by which the Judicial Council reviews rules that the district court makes). Here the council, which would "make" an order under §§ 322(d)(1), "approved" the plan pursuant to 18 U.S.C. §§ 3006A.
 
 
 [5]
 Contrary to Russell's contentions, the standard of review in this case is rational basis review. GO2 does not "involve the impairment of a fundamental right because there is no fundamental right to practice law." Giannini v. Real, 911 F.2d 354, 359 (9th Cir. 1990). "Further, lawyers are not a suspect class. Therefore, a rational level of scrutiny is used." Id. (citation omitted).
 
 
 [6]
 It does not matter that there is no evidence on the record that the bar examination is, in fact, a good way of judging competence. See Heller v. Doe, 509 U.S. 312, 320 (1993) (noting that a classification "may be based on rational speculation unsupported by evidence or empirical data") (citation omitted).
 
 
 [7]
 For this reason, GO2 is not rendered invalid by the fact that many lawyers who are members of the bar in states other than California are fully capable of serving on the Indigent Defense Panel.
 
 
 [8]
 The "right and justice" standard that Russell attempts to apply would be satisfied by the showing of a rational basis for the provision. See Giannini, 911 F.2d at 361.
 
 
 [9]
 Article IV, §§ 2 of the Constitution provides that the "Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."
 
 
 [10]
 Membership in the California bar is open equally to residents and nonresidents of California.
 
 
 [11]
 In Saenz v. Roe, 526 U.S. 489 (1999), the Supreme Court applied the Privileges or Immunities Clause in a right-to-travel context to hold that travelers deciding to become permanent residents of a new state enjoy "the right to be treated like other citizens of that State." 526 U.S. at 500-07. In so doing, the Court relied on a Clause that has traditionally been viewed as "utterly incapable of performing any real work in the protection of individual rights against state interference." Kevin Christopher Newsom, Setting Incorporationism Straight: A Reinterpretation of the Slaughter-House Cases, 109 Yale L.J. 643, 646 (2000).
 
 
 [12]
 Section 1 of the Fourteenth Amendment provides in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."
 
 
 [13]
 In his brief, Russell relied in part on Murphy v. Shaw, 195 F.3d 1121 (9th Cir. 1999), in which we held that a prison inmate had a First Amendment right to give legal assistance to other prisoners. The Supreme Court overturned that ruling, however. See Shaw v. Murphy, 532 U.S. 223 (2001).