**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JANE DOE,

       *Plaintiff-Appellee,*

v.

UNITED STATES OF AMERICA;
DONALD RUMSFELD, in his capacity
as Secretary of Defense; TRICARE
MANAGEMENT ACTIVITY, formerly
Office of Civilian Health and
Medical Programs of the
Uniformed Services,

       *Defendants-Appellants.*

No. 04-35810

D.C. No.
CV-02-01657-TSZ

OPINION

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted
April 6, 2005—Seattle, Washington

Filed August 18, 2005

Before: William C. Canby, Jr., Richard C. Tallman, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Tallman

**COUNSEL**

August E. Flentje, Assistant United States Attorney, United States Department of Justice, Civil Division, Washington, D.C., for the defendants-appellants.

Rita V. Latsinova, Stoel Rives LLP, Seattle, Washington, for the plaintiff-appellee.

**OPINION**

TALLMAN, Circuit Judge:

I

In July 2002, Jane Doe, the pregnant wife of a naval enlisted man stationed out of Everett, Washington, learned during a routine checkup with her obstetrician that her fetus was anencephalic. Anencephaly is a neural tube defect that occurs when the cephalic end of the neural tube fails to close. Closure usually completes between the third and fourth week of pregnancy. The tube's failure to fully close results in a fetus that develops without a forebrain or a cerebellum.

Anencephaly is an ultimately and unequivocally fatal birth defect. Approximately one-third of anencephalic fetuses carried to term are born alive. Fewer than two percent that are born alive survive more than seven days. There is no cure for anencephaly and even extensive medical intervention and continuous life support will not prolong the life of an anencephalic infant more than two months.

Following the initial diagnosis, Doe obtained a second opinion, which confirmed her obstetrician's assessment. Doe consulted with her doctor, medical staff, counselors, and her family. She and her husband then made the difficult decision to terminate her pregnancy.

Mrs. Doe was a covered federal beneficiary under the Civilian Health and Medical Program for the Uniformed Services ("CHAMPUS"), now known as TRICARE. The "purpose of [TRICARE] is to create and maintain high morale in the uniformed services by providing an improved and uniform program of medical and dental care for members and . . . their dependents." 10 U.S.C. § 1071. With respect to pregnancy, TRICARE may provide funding for "medically necessary services and supplies associated with maternity care[.]" 32 C.F.R. § 199.4(e)(16)(i). Maternity care, in turn, includes "[c]are and treatment related to conception, delivery, and abortion, including prenatal and postnatal care . . . and also including treatment of the complications of pregnancy." 32 C.F.R. § 199.2(b).

Congress has prohibited TRICARE, however, from providing federal funds for "abortions except where the life of the mother would be endangered if the fetus were carried to term." 10 U.S.C. § 1093(a). The regulation implementing this statutory prohibition declares:

> The statute under which CHAMPUS operates prohibits payment for abortions with one single exception — where the life of the mother would be endangered if the fetus were carried to term. . . . Abortions performed for suspected or confirmed fetal abnormality (e.g., anencephalic) or for mental health reasons (e.g., threatened suicide) do not fall within the exceptions permitted within the language of the statute and are not authorized for payment under CHAMPUS.

32 C.F.R. § 199.4(e)(2).

Nonetheless, staff at the University of Washington Medical Center, where Doe went to terminate her pregnancy, requested payment for the procedure from TRICARE. TRICARE refused to pay to terminate Doe's anencephalic pregnancy.

Doe filed a complaint in the United States District Court for the Western District of Washington seeking a declaration that the TRICARE statutory and regulatory scheme violated her equal protection rights and the Administrative Procedure Act ("APA"). 5 U.S.C. § 706. Doe concurrently filed a motion for a temporary restraining order, seeking to enjoin the government from withholding payment to terminate her pregnancy. The district court granted Doe's motion for a temporary restraining order, and the government filed a notice of appeal and a motion seeking an emergency stay of the district court order. We declined to grant such a stay, and the government voluntarily dismissed its appeal. The government then paid for the termination of Doe's pregnancy as ordered, electing to proceed on the merits in district court to obtain reimbursement for the costs associated with the procedure.

The government then moved to dismiss in district court and Doe filed a cross-motion for judgment on the pleadings. The district court granted Doe's motion and denied the Government's motion to dismiss. We have jurisdiction and now reverse.

II

We review *de novo* the district court's decision to grant or deny a motion for judgment on the pleadings. *United States v. 2,164 Watches, More or Less Bearing a Registered Trademark of Guess?, Inc.*, 366 F.3d 767, 770 (9th Cir. 2004).

[1] We conclude that Doe's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) before

any answer was filed, an issue of first impression in this circuit, was procedurally premature and should have been denied. The rule provides in relevant part: "*After the pleadings are closed* but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c) (emphasis added). Rule 7, entitled "Pleadings Allowed," defines what filings are considered pleadings and declares which pleadings shall be filed with the district court. It provides:

> There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

Fed. R. Civ. P. 7(a). Thus, the pleadings are closed for the purposes of Rule 12(c) once a complaint and answer have been filed, assuming, as is the case here, that no counterclaim or cross-claim is made. Fed. R. Civ. P. 12(c); 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 (3d ed. 2004) ("Rule 7(a) provides that the pleadings are closed upon the filing of a complaint and an answer."); *see also Flora v. Home Fed. Savings and Loan Ass'n*, 685 F.2d 209, 211 n.4 (7th Cir. 1982) ("Fed. R. Civ. P. 7(a) prescribes when the pleadings are closed.").

**[2]** Doe's motion for judgment on the pleadings was filed before the government filed an answer. Accordingly, Doe's motion was premature and should have been denied. *See, e.g.*, *Stands Over Bull v. Bureau of Indian Affairs*, 442 F. Supp. 360, 367 (D. Mont. 1977) (denying Rule 12(c) motion for judgment on the pleadings where defendant had not filed an answer, stating that "[j]udgment on the pleadings under Rule

12(c) is available only when the pleadings are closed"); *see also City Bank v. Glenn Constr. Corp.*, 68 F.R.D. 511, 512 (D. Haw. 1975).

### III

Having determined that Doe's motion for judgment on the pleadings was untimely, we turn now to the Government's motion to dismiss, which the district court improperly denied.

Doe makes two claims against the Government. First, she alleges that § 1093(a)'s prohibition on abortion funding, except where the life of the mother would be endangered, violates the Equal Protection component of the Due Process Clause of the Fifth Amendment to the U.S. Constitution because it bears no rational relationship to any legitimate state governmental interest. Second, Doe claims that TRICARE's exclusion of coverage in cases of anencephaly violates § 706 of the APA because the agency action is arbitrary and capricious.

We review a district court's denial of a motion to dismiss *de novo. Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). On a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff, taking all her allegations as true and drawing all reasonable inferences from the complaint in her favor. *See, e.g.*, *id.* Moreover, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). We consider each of Doe's claims in turn.

### A

**[3]** Equal protection under the Fifth Amendment guarantees no substantive rights or liberties. *Harris v. McRae*, 448 U.S.

297, 322 (1980). Rather, it entrenches a right to be free from discrimination based on impermissible statutory classifications and other governmental action. *Id.* Where such classification is not predicated on membership in a suspect or quasi-suspect class, the Constitution requires only that the classification rest on grounds reasonably related to the achievement of any legitimate governmental objective. *Id.* (explaining rational basis scrutiny).

**[4]** In *McRae*, the Supreme Court considered an equal protection claim similar to Doe's, challenging the Hyde Amendment, a restriction appended to Title XIX of the Social Security Act that prohibited the use of federal funds to reimburse the cost of abortions under the Medicaid program except under certain circumstances. *McRae*, 448 U.S. at 311-18. Specifically, the Hyde Amendment provided:

> [N]one of the funds provided by this joint resolution shall be used to perform abortions except where the life of the mother would be endangered if the fetus were carried to term; or except for such medical procedures necessary for the victims of rape or incest when such rape or incest has been reported promptly to a law enforcement agency or public health service.

*Id.* at 302 (quoting Pub. L. No. 96-123, § 109, 93 Stat. 926) (alteration in original).

The Supreme Court held that the Hyde Amendment was to be reviewed under the rational basis standard of review, because it dealt with no suspect categories and did not impinge on any fundamental constitutional right. *See id.* at 312-323. We conclude, and the parties agree, that this reasoning in *McRae* is fully applicable here. *See also Britell v. United States*, 372 F.3d 1370, 1380 (D.C. Cir. 2004) ("*Britell II*"). Accordingly, we review § 1093(a) to determine whether

its restrictions are rationally related to any legitimate governmental interest. *Id.*

**[5]** *McRae* is, again, particularly instructive. The Supreme Court in *McRae* held that the government's "important and legitimate interest in protecting the potentiality of human life," *Roe v. Wade*, 410 U.S. 113, 162 (1973), was rationally related to the Hyde Amendment's restrictions. *McRae*, 448 U.S. at 324. The *McRae* Court explained:

> By subsidizing the medical expenses of indigent women who carry their pregnancies to term while not subsidizing the comparable expenses of women who undergo abortions (except those whose lives are threatened), Congress has established incentives that make childbirth a more attractive alternative than abortion for persons eligible for Medicaid. These incentives bear a direct relationship to the legitimate congressional interest in protecting potential life.

*Id.* at 325.

**[6]** *McRae*'s applicability here cannot be denied. Doe challenges a statute nearly identical to one that passed constitutional muster almost 25 years ago. The only difference Doe urges upon us, that the Hyde Amendment affects women on Medicaid whereas § 1093(a) prohibits funding for women covered by TRICARE, is insufficient to distinguish it from controlling the outcome of Doe's appeal. *See Britell* II, 372 F.3d at 1384. Therefore, we are bound by the Supreme Court's holding in *McRae*.

**[7]** Doe claims that in her particular circumstances there is no rational relationship between an interest in potential life and § 1093(a)'s funding restrictions because of her fetus' terminal condition. Rational basis review, however, "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Heller v. Doe*, 509 U.S. 312, 319 (1993)

(quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993)). A statute "does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *Id.* at 321 (citation and quotation marks omitted). Rather, the constitutional test requires only that the statute, as a general matter, serve a legitimate governmental purpose. *Russell v. Hug*, 275 F.3d 812, 820 (9th Cir. 2002). Just as in *Russell*, Doe's contention that "we must consider [her] personal circumstances when judging the reasonableness of [1093(a)'s funding restrictions] is an impermissible attempt to ratchet up our standard of review from rational basis toward strict scrutiny." *Id.* Because the statute is rationally related to a legitimate government purpose, *see McRae*, 448 U.S. at 326; *Britell* II, 372 F.3d at 1380-81, and because an "imperfect fit" does not render a statute invalid, *Russell*, 275 F.3d at 820, we reject Doe's equal protection challenge under rational basis review.

B

Doe's second cause of action alleges that TRICARE's exclusion of coverage under 32 C.F.R. § 199.2(e)(2) is arbitrary and capricious and contrary to constitutional law. The APA provides that a reviewing court shall "hold unlawful and set aside agency action, findings and conclusions found to be — (A) arbitrary, capricious . . . or otherwise not in accordance with [the] law; [or] (B) contrary to constitutional right, power, privilege, or immunity[.]" 5 U.S.C. § 706.

[8] For the same reasons that Doe's equal protection challenge fails to state a claim, her claims that the implementing regulation is unconstitutional or arbitrary and capricious under the APA are without merit.

C

We conclude our analysis with a few words of sympathy. Anencephaly is a horrible defect that leaves families like

Doe's devastated, faced with difficult decisions and even more difficult psychological experiences. We depart from our analysis only to observe that while recognizing that the foregoing discussion may seem at times callous and unfeeling, we express our deepest sympathy for the families who must face this difficult ordeal. It is the nature of the legal analysis, the commands of *stare decisis*, and the deference we must afford congressional judgment that require the result we reach here today. We remain confident, however, that the law commands it.

The judgment of the district court is **REVERSED.**