David J. GALLO, Movant–Appellant,

v.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA, Real Party in Interest–Appellee.

No. 01–17332.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2002.

Submission Vacated Dec. 9, 2003.

Resubmitted Nov. 19, 2003.

Filed Nov. 19, 2003.

---

David J. Gallo, Del Mar, CA, movant-appellant.

Daniel J. McAuliffe, Andrew M. Jacobs, Snell & Wilmer, LLP, Phoenix, AZ, for the real party in interest.

Ernest Calderon, Lindsay E. Jones, Jennings, Strouss & Salmon, PLC, Phoenix, AZ, for amicus curiae State Bar of Arizona.

Before: BRUNETTI and TASHIMA, Circuit Judges, and EZRA,* District Judge.

## OPINION

EZRA, District Judge.

■ Movant–Appellant David J. Gallo ("Gallo") appeals from the District Court's

---

\* The Honorable David Alan Ezra, Chief United States District Judge for the District of Hawai'i, sitting by designation.

1. Admission *pro hac vice* refers to an attorney who is admitted temporarily to practice in a

order that pursuant to an amendment to Rule 1.5 of the Local Rules of the United States District Court for the District of Arizona ("Rule 1.5"), Gallo no longer may appear before the District of Arizona without successful completion of a *pro hac vice* application.[1] In his appeal, he argues that the rule is unconstitutional and that the District Court erred in concluding that Gallo had received sufficient notice of the applicability of the amendment to him and that the Ninth Circuit should exercise its supervisory power to direct the District Court to apply Rule 1.5(a) prospectively.

## BACKGROUND

Gallo was admitted to the Bar of the United States District Court for the District of Arizona (the "District Court") on July 28, 1995, under Local Rule 1.5, which allowed non-resident attorneys to gain admission based on their admission to the bar of *any* United States District Court. In September 1999, the District Court amended Local Rule 1.5 to state: "Admission to and continuing membership in the bar of this Court is limited to attorneys who are active members in good standing of the State Bar of Arizona." United States District Court For the District of Arizona, Local Rules 1.5(a) (2003).

On May 8, 2000, Gallo participated in the filing of *Bartlett v. Arthur Andersen*, CIV 00–852–PHX–SMM, in the District Court of Arizona and served as Plaintiffs' co-counsel of record. On September 1, 2000, Gallo received a letter, dated August 30, 2000, from the Attorney Admissions Clerk of the District Court in which he was informed that he was no longer admitted to appear generally before the District

jurisdiction for the purpose of participating in a particular case. BLACK'S LAW DICTIONARY 1227 (7th ed.1999).

Court of Arizona. Specifically, the letter stated: "Your name has appeared on pleadings filed with this court; however a review of our files indicates that you have not been admitted to practice in this Court." The letter gave Gallo until September 29, 2000, to apply for admission *pro hac vice* to avoid being removed as counsel of record.

On September 25, 2000, Gallo filed an *Ex Parte* Application for Order Clarifying Status of Counsel, or, Alternatively, for Order *Nunc Pro Tunc* Granting Admission *Pro Hac Vice* ("*Ex Parte* Application"). On October 2, 2000, the District Court filed an Order in which it denied Gallo's *Ex Parte* Application and allowed Gallo to appear in the District Court *pro hac vice*. *See* Order, filed October 2, 2000 ("October 2, 2000 Order"). Gallo paid the twenty-five dollar fee and was admitted to appear in the action *pro hac vice*. Final judgment in the *Bartlett* case was entered on September 17, 2001, and on October 12, 2001, Gallo filed his Notice of Appeal.[2] We vacated and deferred submission so that we could receive briefing from the District Court, the Real Party in Interest–Appellee. The State Bar of Arizona also submitted an Amicus Brief.

## JURISDICTION

### 1. Appellate Jurisdiction Under 28 U.S.C. § 1291

■ Gallo's case is currently before us despite the fact that Gallo did not commence an official action in the District Court regarding the effect of the new Local Rules on his ability to appear before the District Court. Rather, as part of the proceedings involved in his representation of the Plaintiffs in *Bartlett*, Gallo requested the District Court to review the August 30, 2000 letter informing him that he was not admitted to practice in the District Court. In his *Ex Parte* Application, he sought the District Court's reconsideration of the decision to apply the amended Local Rules to him.

Gallo argues that the District Court's October 2, 2000 Order denying his *Ex Parte* Application was an interlocutory order and that pursuant to the applicable case law in the Ninth Circuit, his present appeal of that order is properly before us. Specifically, Gallo argues that jurisdiction exists because the interlocutory order constituted a "collateral order" that was immediately appealable. In support of this proposition, he cites *Estate of Bishop By and Through Bishop v. Bechtel Power Corporation*, 905 F.2d 1272, 1274 (9th Cir. 1990) (finding that "[f]or the doctrine to apply, the challenged order must: (1) conclusively determine the disputed question; (2) resolve an important issue completely separate from the merits of the underlying action; and (3) be effectively unreviewable from a final judgment").

In accordance with *Bishop*, Gallo argues that the October 2, 2000 Order provided a conclusive determination regarding his admission status, which was an issue unrelated to the Plaintiffs' claims in the underlying *Bartlett* action. Gallo also asserts that the Order was unreviewable from the final judgment in the *Bartlett* case. *Id.* (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)) (affirming that "the purpose of the finality requirement is to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results") (internal quotation marks and citation omitted).

Finally, Gallo asserts that even though he did not appeal the "collateral order"

2. In the underlying action, we affirmed in part and dismissed in part, finding that the investors had failed to plead their securities fraud claims with sufficient particularity. *See Bartlett v. Andersen*, 55 Fed.Appx. 819 (9th Cir.2003).

immediately, we still have jurisdiction to review the District Court's decision because the Order merged into the final judgment in the underlying case, *Bartlett,* which was entered on September 17, 2001. *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper,* 254 F.3d 882, 889 n. 1 (9th Cir.2001) (citing *Hook v. Arizona Department of Corrections,* 107 F.3d 1397, 1401 (9th Cir.1997)) (finding that if a party does not appeal an interlocutory order when it becomes immediately appealable, the party still has the right to appeal the interlocutory order after entry of the final judgment because the interlocutory order merges into the final judgment and may be challenged in an appeal from that judgment). Thus, Gallo contends that his Notice of Appeal was properly and timely filed on October 12, 2001, and that we have jurisdiction to review the District Court's decision.

The District Court responds by arguing that as a matter of law, the District Court's October 2, 2000 Order prohibiting Gallo from practicing generally before it cannot be reviewed upon appeal. *In re Wasserman,* 240 F.2d 213, 214 (9th Cir. 1956). The District Court argues that pursuant to *Wasserman* this court lacks jurisdiction to review an order denying a petition for admission to practice before a United States District Court. In *Wasserman,* we found that the Southern District of California's order barring Wasserman from appearing before it was not a final decision and therefore it was unappealable. Wasserman had never been admitted to the bar of the Southern District of California and thus the case focused on the laws governing applications for admission to the bar.

Gallo argues that his case is distinguishable because he had already obtained admission to practice before the District Court. He asserts that he is not requesting reconsideration of a denial of a motion for admission based on a "[f]ailure or refusal to act favorably upon such an application." *Wasserman,* 240 F.2d at 214 n. 1 (internal quotation marks and citations omitted). Rather, he claims he is seeking redress for an improper disbarment. In light of the fact that Gallo previously had been admitted to practice before the District Court, his situation may not qualify as a run of the mill application. And, as discussed below, there are constitutional dimensions to Gallo's situation.

As the District Court stated in its October 2, 2000 Order, however, under the Local Rules in effect at the time Gallo sought to practice before the District Court, he no longer met the eligibility requirements for "continuing membership," which required membership in the State Bar of Arizona. Moreover, unlike some other districts who have revised their respective local rules governing admission, these Local Rules do not include a grandfather clause. *See, e.g.,* Local Rules of Practice for the United States District Court for the District of Hawai'i, Local Rule 83.1(b) (2002) ("After October 1, 1997, an applicant for admission to membership in the bar of this court must be an attorney who is a member in good standing of the bar of the State of Hawai'i."); Local Rules for the United States District Court for the Northern District of California, Local Rule 11–1(b) ("After the effective date of these rules [Jan. 1, 2001] an applicant for admission to membership in the bar of this Court must be an attorney who is an active member in good standing of the State Bar of California."). Thus, Gallo no longer met the requirements for membership in the bar of the District Court. As discussed below, even if Gallo had a property interest in his membership, the District Court had a legitimate reason for altering the local rules governing admission such that its amendment passes the rational basis test. Accordingly, under ei-

ther analysis, his *Ex Parte* Application was necessarily an application for admission.

Consistent with its interpretation of *Wasserman*, the District Court also argues that Gallo's reliance on *Estate of Bishop* is misplaced. It correctly points out that in *Estate of Bishop* the issue before this court was whether an order denying a motion to remand to state court was an appealable order. Despite the detailed analysis of the collateral order exception, the District Court argues that *Estate of Bishop* nevertheless precludes a finding that Gallo's appeal is reviewable because such review is "confined to whether the federal[district] court would have had jurisdiction had the case been filed in federal court in the posture it had at the time of the entry of final judgment." *Estate of Bishop*, 905 F.2d at 1275 (internal quotation marks and citations omitted). The District Court argues that because *Wasserman* precludes finding jurisdiction over the substance of Gallo's appeal, Gallo's reliance on *Estate of Bishop* is unavailing.[3]

Upon consideration of the District Court's arguments under *Wasserman* and *Estate of Bishop*, we agree that appellate jurisdiction to review an order by the District Court denying admission to practice generally before it is lacking. Irrespective of whether the October 2, 2000 Order constitutes an interlocutory order on appeal, it is nonetheless an order issued by the District Court denying Gallo's request for a waiver from the Local Rules in effect at the time he submitted filings on behalf of his clients. As this Circuit and other Circuits have found, the denial of a petition for admission to a district court bar is neither a final order appealable under 28 U.S.C. § 1291 ("Section 1291") nor an interlocutory order appealable under 28 U.S.C. § 1292. *Wasserman*, 240 F.2d at 214–16. Accordingly, we do not have ap-

pellate jurisdiction to review the denial of Gallo's *Ex Parte* Application to appear before the District Court.

In his Opening Brief and Reply, Gallo attempts to distinguish this precedent by characterizing both the initial letter sent to him on August 30, 2000, and the October 2, 2000 Order as a disbarment action, rather than a denial of an application for admission. Accordingly, he argues that such action is inappropriate in the absence of any findings of misconduct or unfitness, the only grounds, he asserts, upon which an attorney who has been admitted to a bar may lose his or her license. As stated above, we recognize that Gallo's situation differs somewhat from the situation in *Wasserman* because he previously was licensed to appear generally before the court. However, we disagree that the District Court's action constitutes a disbarment. Gallo's *Ex Parte* Application was a petition to the District Court for a waiver of Rule 1.5, or, alternatively, permission to proceed *pro hac vice*. The application constituted a request to practice before the court despite the existing laws proscribing such appearances. As discussed, *infra*, the amended law is constitutional on its face and as applied by the District Court to Gallo's situation.

As recognized by Gallo, disbarment proceedings generally involve an ethical violation sufficient to prevent an attorney from appearing in any capacity before the District Court. All parties concede that the decision to enforce the amended version of the Local Rules was not based on any character determination or other ethical considerations. To the contrary, Gallo was granted *pro hac vice* admission. Thus, the District Court's Order is aptly characterized as a denial of Gallo's application for a waiver of the Local Rules as otherwise

---

**3.** The District Court also notes that the holding in *Hook* only applies *if* the October 2, 2000 Order is appealable, which it contends it is not.

applicable to him. Accordingly, the law established in *Wasserman* applies such that the District Court's October 2, 2002 Order is neither final nor appealable and jurisdiction under Section 1291 does not exist.

**2. Petition for Writ of Mandamus Under 28 U.S.C. § 1651(a)**

■ Alternatively, Gallo argues that this court should treat his October 12, 2001 Notice of Appeal as a petition for writ of mandamus. In the absence of appellate jurisdiction pursuant to 28 U.S.C. §§ 1291–1292, jurisdiction may exist under 28 U.S.C. § 1651(a). *See Miller v. Gammie*, 335 F.3d 889, 895 (9th Cir.2003) (en banc) (treating notice of appeal where appellate jurisdiction was lacking as a petition for a writ of mandamus); 28 U.S.C. § 1651(a) (2000) ("[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."). To determine whether to issue a writ of mandamus, we must consider the following five factors:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires.
> (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal.
> (3) The district court's order is clearly erroneous as a matter of law.
> (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.
> (5) The district court's order raises new and important problems, or issues of law of first impression.

*Allen v. Old Nat'l Bank (In re Allen)*, 896 F.2d 416, 419–420 (9th Cir.1990) (citing

*Bauman v. United States Dist. Court*, 557 F.2d 650, 654–55 (9th Cir.1977)).

■ The District Court argues that the third factor is dispositive in this case such that our review of the District Court's Order for clear error will determine whether we should issue a writ of mandamus. Indeed, it is well established in this Circuit that "[w]hen a district court's decision is correct as a matter of law, a writ of mandamus should be denied." *In Re Allen*, 896 F.2d at 420 (citing *Rosenfeld v. United States*, 859 F.2d 717, 723 (9th Cir. 1988)); *Survival Sys. Div. of the Whittaker Corp. v. United States Dist. Court*, 825 F.2d 1416, 1418 & n. 1 (9th Cir.1987). Accordingly, we will review the District Court's decision for clear error.

## STANDARD OF REVIEW

■ In light of our conclusion that we do not have appellate jurisdiction over the District Court's decision to deny Gallo's request to practice generally before it, we decline to review the District Court's conclusions of law de novo. In the absence of a direct appeal, we shall treat Gallo's challenge to the District Court's Order as a petition for writ of mandamus. Accordingly, we review the District Court's October 2, 2000 Order for clear error as a matter of law. *Executive Software North America, Inc. v. United States Dist. Court*, 24 F.3d 1545, 1551–52 (9th Cir.1994).[4]

## DISCUSSION

**1. District Court Order**

As established above, the District Court's October 2, 2000 Order did not "disbar" Gallo and all attorneys similarly situated. Instead, it affirmed that Gallo was no longer eligible for "continuing membership" in the bar of the District

---

**4.** We address, *infra*, Gallo's assertion that a finding of clear error is unnecessary because

we have plenary supervisory over the local rules.

Court. The District Court also determined that the amended Local Rules governing admission and membership should not be waived to account for the fact that under the former version of the rules, Gallo previously had been admitted to practice generally before the District Court. It determined that pursuant to the inherent authority of federal district courts to regulate the practice of law in their forums, the amendments to the Local Rules were both constitutional on their face and as applied to Gallo's situation. The District Court declined to find that at a minimum, the amended Local Rules should be applied prospectively to recognize and preserve Gallo's previous admission and membership. The District Court also determined that Gallo had not suffered a due process violation but was granted admission to practice before the District Court of Arizona on a case-by-case basis through the avenue of *pro hac vice.*

We now review this decision for clear error and begin our analysis by considering the constitutional dimensions of Gallo's claim. Although the District Court declined to address the constitutional arguments, we believe it is necessary to conduct a thorough review of whether application of the amended Rule 1.5(a) in this case deprived Gallo of a constitutionally protected property interest in his license to practice generally before the District Court of Arizona. We nonetheless arrive at the same outcome as the District Court because we find that when analyzed under the applicable constitutional scrutiny, the District Court's amendment was rationally-related to a legitimate state interest in ensuring the fitness of lawyers who appear before it.

We then discuss the remainder of the District Court's opinion to determine whether the District Court properly applied the amended version of the Local Rules governing admission and continuing

membership in the bar of the District Court. As suggested in our previous discussion regarding jurisdiction, Gallo's ability to appear before the District Court subsequent to the amendments is governed by the laws in effect at the time of the proceeding. After discussion of this issue, we turn to the question of whether Gallo received sufficient and proper notice of the relevant changes in the Local Rules.

### 2. Constitutionality of Rule 1.5(a)

The amendments to the Local Rules are similar to laws adopted by the majority of federal district courts. *Zambrano v. City of Tustin,* 885 F.2d 1473, 1483 (9th Cir. 1989) (holding that "[a]dmission to the state bar is the essential determinant of professional ethics and legal competence") (citing *In re Evans,* 524 F.2d 1004, 1007 (5th Cir.1975)). As we established above, we do not find that the District Court subjected Gallo to a disbarment action. However, we recognize that no jurisdiction has enacted a requirement that divests an attorney of his license to practice, which is the effect of the provision in this case. Accordingly, we must consider whether this provision has deprived Gallo of a constitutionally protected property interest.

### A. Substantive Due Process

■ The Supreme Court has held that property interests derive not from the Constitution but from "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Coll. v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He

must, instead, have a legitimate claim of entitlement to it." *Id.*

We have recognized in a number of contexts that an individual has a legitimate property interest in his or her professional license. *See Brown v. Smith (In re Poole)*, 222 F.3d 618, 620 (9th Cir.2000); *Sabow v. United States*, 93 F.3d 1445, 1456 (9th Cir.1996) (holding that physician has a constitutionally protected property interest in his or her medical license); *see also Barry v. Barchi*, 443 U.S. 55, 64, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979). Our case law holds that a professional license, once conferred, constitutes an entitlement subject to constitutional protection. Accordingly, it may be argued that in this case, procedural alternatives, including *pro hac vice* admission, provide an inadequate substitute for the individual's previously conferred property interest. *See Dittman v. Cal.*, 191 F.3d 1020, 1030–31 (9th Cir.1999) (holding that acupuncturist is entitled to substantive and procedural due process analysis where California required him to submit his social security number to renew his state license); *Brown v. McGarr*, 774 F.2d 777, 782 (7th Cir.1985) (holding that attorney entitled to substantive and procedural due process analysis where general order revoked licenses of trial lawyers who did not have certain level of trial experience).

■ Applying the well-established constitutional analysis to this case, a retroactive licensing scheme not affecting fundamental rights will pass scrutiny if the scheme bears "a rational relationship to a legitimate state interest." *See Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043,

1049 (9th Cir.2000); *Schware v. Bd. of Bar Exam'rs of State of N.M.*, 353 U.S. 232, 239, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (stating that any qualifications to the state bar "must have a rational connection with the applicant's fitness or capacity to practice law").[5]

We applied the rational basis standard in *Lupert v. California State Bar*, 761 F.2d 1325 (9th Cir.1985), to address California's State Bar requirement that students from unaccredited law schools pass certain examinations. We held that the requirement did not violate equal protection because it served the legitimate purpose of protecting students from pursuing a profession for which they did not qualify and aided persons in assessing the quality of training provided by the schools. *Id.* at 1328–29. We held likewise in *National Association for the Advancement of Psychoanalysis*, 228 F.3d 1043. Plaintiffs argued that California's licensing scheme violated their due process rights by prohibiting them from assuming the title "psychologist." *Id.* at 1051. We held that the licensing scheme, which contained certain educational requirements, was rationally related to California's interest in protecting the mental health and safety of California's citizens. *Id.*

■ From *Lupert* and *National Association for the Advancement of Psychoanalysis* emerges the long-standing rule that any "conceivable basis" will justify the constitutionality of a licensing scheme not affecting fundamental rights. *Lupert*, 761 F.2d at 1328. Federal courts have inherent and broad regulatory authority to make rules respecting the admission, prac-

---

**5.** *See also Austin v. City of Bisbee, Ariz.*, 855 F.2d 1429, 1436 (9th Cir.1988) ("[T]he retroactive application of economic legislation meets the test of due process simply if 'retroactive application of the legislation is itself justified by a rational legislative purpose.' ") (quoting *Pension Benefit Guaranty Corp. v.*

*R.A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984)); *Giannini v. Real*, 911 F.2d 354, 359 (9th Cir.1990) (holding that the standard of review is rational basis review because there is no fundamental right to practice law and lawyers are not a suspect class).

tice, and discipline of attorneys in the federal courts. *Robinson*, 86 U.S. (19 Wall.) 505, 22 L.Ed. 205; *Garland*, 71 U.S. (4 Wall.) 333, 18 L.Ed. 366. Courts have specific authorization under 28 U.S.C. § 2071, which states in pertinent part:

(a) The Supreme Court and all courts established by Act of Congress *may from time to time prescribe rules for the conduct of their business.* Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072 of this title.

(b) Any rule prescribed by a court, other than the Supreme Court, under subsection (a) shall be prescribed only after giving appropriate public notice and an opportunity for comment. Such rule shall take effect upon the date specified by the prescribing court and shall have such effect on pending proceedings as the prescribing court may order.

28 U.S.C. § 2071 (emphasis added).

Historically, however, "the licensing and regulation of lawyers has been left exclusively to the states and the District of Columbia within their respective jurisdictions." *Leis v. Flynt,* 439 U.S. 438, 442, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979). The states supply not only the qualifications for admission to practice and the standards of professional conduct but also the guidelines and machinery for the discipline of lawyers. *Id.* The State Bar of Arizona, under the authority and supervision of the Arizona Supreme Court, administers Arizona's system of attorney admission and regulation. Ariz. R.S.Ct. 31. The State Bar oversees the admission of attorneys, monitors continuing legal education, and maintains the integrity of the profession. Ariz. R.S.Ct. 42, 45, 47.

In *Russell v. Hug,* 275 F.3d 812 (9th Cir.2002), we held that district courts may rely on the infrastructure provided by state bar associations in meeting their own needs for monitoring attorney admission and practice in the federal courts. The pertinent issue in *Russell* concerned the constitutionality of a general order issued by the Northern District of California that required private attorneys selected to represent indigent defendants to be members of the California State Bar. We upheld the requirement under the equal protection clause because the rule served the district court's legitimate interest "in ensuring a uniform minimum level of competence for lawyers." *Id.* at 819. We stated:

Because there are more than fifty bar examinations in the United States, the minimum standard of competence required to be a 'lawyer' arguably varies considerably among the States. Requiring membership in the California Bar allows the Northern District of California to be sure that all attorneys ... are at least capable enough to clear the standard required in California—a standard with which the Northern District is familiar, and a standard that is quite possibly higher than that of many other states.

*Id.*

The *Russell* court also concluded that the Northern District's requirement that attorneys be members of the bar in "good standing" was rationally related to the federal court's legitimate interest "in policing standards of ethical conduct of the lawyers who practice law on the Indigent Panel." *Id.* at 820. We stated that "the California bar membership requirement makes discipline easier for the Northern District because the California Bar provides the Northern District with a disciplinary mechanism complementary to its own." *Id.* Finally, the court noted that the adoption of California's requirements permitted the district court to bring allegations of professional misconduct to the attention of the California State Bar. *Id.*

Rule 1.5(a) is similar to the general order at issue in *Russell.* In both cases, the local rule serves the legitimate interest of ensuring that all attorneys practicing before the courts "clear the standard required" by the respective state bar associations.[6] *Id.* at 819. In its Amicus Brief, the Arizona State Bar argues that because the District Court does not have its own administrative staff to supervise and regulate the conduct and ethics of attorneys who appear before it, it relies heavily upon the resources of the State Bar to implement these rules. Absent the Arizona State Bar's assistance in undertaking the administrative steps necessary to enforce the regulations governing attorney conduct, questions of misconduct may never properly come before the District Court.

Indeed, the standard for admission in both Arizona and California may well exceed that required in other states. Nonetheless, Rule 1.5(a) serves the court's legitimate interest in simplifying the disciplinary process. No longer must the District Court refer wayward lawyers to out-of-state bar associations. The amended version of Rule 1.5(a) permits the District Court to limit disciplinary referrals to the Arizona State Bar. The Arizona State Bar also provides a number of procedures that permit the District Court to file disciplinary complaints free from public exposure. If the District Court files a complaint, the Arizona State Bar brings the complaint on behalf of the District Court. The District Court is not guaranteed the same privacy when referring attorneys to other state bar associations. This special procedure provides an additional legitimate justification for amending Rule 1.5(a).

In light of this analysis, we conclude that the retroactive application of the Arizona Bar requirement does not violate Gallo's substantive due process rights because it is justified by the rational purpose of streamlining and perfecting the regulation of attorney admission in the Arizona District Court.

## B. Procedural Due Process

Gallo also contends that the new licensing scheme resulted in the deprivation of his property without adequate notice and opportunity to be heard. Whether an affected party is entitled to individual notice and a pre-deprivation hearing depends upon the character of the action. When the action is purely legislative, the statute satisfies due process if the enacting body provides public notice and open hearings. *Texaco v. Short,* 454 U.S. 516, 536, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982); 28 U.S.C. § 2071(b). "[I]t has never been suggested that each citizen must in some way be given specific notice of the impact of a new statute on his property before that law may affect his property rights." *Bi–Metallic Inv. Co. v. State Bd. of Equalization,* 239 U.S. 441, 445, 36 S.Ct. 141, 60 L.Ed. 372 (1915) (holding that individual notice is not necessary if the government imposes a "rule of conduct [that] applies to more than a few people"); *Halverson v. Skagit County,* 42 F.3d 1257, 1261 (9th Cir.1994).

When the government action is adjudicative, however, due process requires "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them

---

**6.** Although the record does not indicate that the District Court amended Local Rule 1.5(a) for the explicit purpose of ensuring quality attorney representation, it is well-established that rational basis scrutiny permits the court to consider any *conceivable* justifications for enacting the law. *See Nat'l Ass'n for the Advancement of Psychoanalysis,* 228 F.3d at 1050.

an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Londoner v. Denver*, 210 U.S. 373, 385, 28 S.Ct. 708, 52 L.Ed. 1103 (1908) (finding procedural due process violated where law affected a relatively small number of persons).

■ Indeed, "the line between legislation and adjudication is not always easy to draw," *LC & S, Inc. v. Warren County Area Plan Comm'n*, 244 F.3d 601, 603 (7th Cir.2001). However, this is not one of the more difficult cases. The three primary considerations are: (1) whether the government action applies to specific individuals or to unnamed and unspecified persons; (2) whether the promulgating agency considers general facts or adjudicates a particular set of disputed facts; and (3) whether the action determines policy issues or resolves specific disputes between particular parties. *United States v. Fla. E. Coast R.R. Co.*, 410 U.S. 224, 244–46, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973); *Harris v. County of Riverside*, 904 F.2d 497, 501 (9th Cir.1990); *McGarr*, 774 F.2d at 780.

In *McGarr*, the Seventh Circuit considered a general order issued by the Illinois District Court that required trial attorneys to have a certain level of trial experience. 774 F.2d at 779. The rule revoked the licenses of those lawyers who did not have the requisite level of experience. As in this case, the plaintiff claimed that because the rule changed the admission requirements after he had qualified for admission, the local order effectively "disbarred" him. *Id.* at 780. Similar to the reasons set forth by the District Court in this case, the Seventh Circuit rejected the plaintiff's claim, stating:

> Disbarment . . . is a punishment or penalty imposed on the lawyer. A court conducting a disbarment proceeding

must determine for itself the facts of the attorney's conduct and whether that conduct had been so grievous as to require disbarment. Thus, the ultimate result of a disbarment proceeding is a finding, based upon the conduct and actions of an individual attorney, that the individual attorney is unfit. Unlike a disbarment proceeding focused upon specific incidents of misconduct by an individual attorney, the district court's trial bar rules were adopted in response to fact finding that was not focused on individual attorneys.

*Id.* (internal quotation marks and citations omitted).

■ The present case is indistinguishable. The requirement that all attorneys be members of the Arizona Bar was adopted to streamline the District Court's attorney regulation procedures. The effect of the law is to revoke a general class of licenses, but unlike a disbarment proceeding, the ground for doing so is not individual attorney misconduct. *Cf. Ohio Bell Tel. Co. v. Pub. Util. Comm'n*, 301 U.S. 292, 302–05, 57 S.Ct. 724, 81 L.Ed. 1093 (1937) (holding that a retroactive rate determination based solely on facts about one supplier is adjudicative). Rule 1.5(a) is directed at the legitimate government purpose of improving the method and means of attorney regulation in the federal district courts, and it attempts to achieve this goal without targeting individual misconduct.

Since the amended rule affects a large number of people, as opposed to targeting a small number of individuals based on individual factual determinations, Gallo's claim that he is entitled to individual notice and an opportunity to be heard fails because the amended legislative rule does not "give rise to constitutional procedural due process requirements." [7] *Christensen*

---

7. As discussed, *infra*, Gallo does not contend that he received inadequate public notice of

the pending changes to Rule 1.5(a). The Dis-

*v. Yolo County Bd. of Supervisors*, 995 F.2d 161, 166 (9th Cir.1993); *see also Harris*, 904 F.2d at 502 (holding that no individual notice and hearing required where county decisions affect large numbers of people); *McGarr*, 774 F.2d at 780.

In most cases an individual would be entitled to individual notice and an opportunity to be heard before retroactive extinguishment of his or her vested property interest. Justice Scalia has commented that the "central distinction" between rule-making and adjudication is that rules have legal consequences "only for the future." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 216–17, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (Scalia, J., concurring). Nevertheless, this case presents the unique situation in which the rule, although having that "central distinction" of retroactivity, resembles legislation in every other way. Namely, (1) the government action applies to unnamed and unspecified persons, (2) the District Court considered general rather than particular facts; and, (3) rather than resolving specific disputes between particular parties, the action determines policy issues regarding the regulation of attorney admissions in the federal courts.

For these reasons, we conclude that even when subjected to a constitutional analysis, the balance of factors weighs in favor of finding that the enactment of Local Rule 1.5(a) is a legislative act such that Gallo's claim fails. Even though he arguably was deprived of a vested property interest, the rule bears a rational relationship to legitimate government interests.

### 3. Applicability of Local Rule 1.5

 As discussed above, we do not characterize the actions taken by the District Court as an unconstitutional disbarment. It is the well established law that a court's power to disbar "can only be exercised where there has been such conduct on the part of the parties complained of as shows them to be unfit to be members of the profession." *Ex Parte Robinson*, 86 U.S. (19 Wall.) 505, 512, 22 L.Ed. 205 (1873); *see also Ex Parte Garland*, 71 U.S. (4 Wall.) 333, 379, 18 L.Ed. 366 (1866). Here, Gallo is guilty of no misconduct and the District Court's finding that he could not appear generally before it was not the result of any disciplinary action. Instead, his ability to practice generally before the District Court expired as a result of the amendments to the laws governing membership. Accordingly, the District Court committed no clear error by finding that the amendments did not "inherently interfere with [Gallo's] ability to practice before this Court." October 2, 2000, at 2. Gallo still has the right to practice before the District Court by seeking admission to the State Bar of Arizona or by requesting on a case-by-case basis that he be allowed to appear before the District Court *pro hac vice*.

Having resolved that the District Court did not act to disbar Gallo, we address Gallo's additional argument that because he gained admission at one point in time, he cannot now be denied the right to practice generally before the District Court because the qualifications for admission have changed. He characterizes this argument as one for prospective application of

---

trict Court issued notice of public hearings on the proposed amendments on May 19, 1999. The amended rules were apparently posted on the District Court's website. On July 12, 1999, the District Court held two public hearings regarding the amended rule at which several interested parties expressed their con-

cerns with Rule 1.5. Gallo had access to the requisite information and his "rights [were] protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule." *Bi–Metallic*, 239 U.S. at 445, 36 S.Ct. 141 (1915).

Rule 1.5. Gallo cites the Supreme Court's holding in *Selling v. Radford*, which held that where the prerequisite to admission to the Bar of the Supreme Court was:

> membership of the Bar of the court of last resort of a state ... its effect is exhausted upon admission to this Bar which it has served to secure,—a result which becomes manifest by the consideration that although the membership of the Bar of the court of last resort of a state, after admission here, might be lost by change of domicil from one state to another, if so provided by the state law or rule of court, or by any other cause not involving unworthiness, such loss would be wholly negligible upon the right to continue to be a member of the Bar of this court.

*Selling v. Radford*, 243 U.S. 46, 49, 37 S.Ct. 377, 61 L.Ed. 585 (1917).

Gallo interprets this holding to stand for the proposition that upon admission to practice before the District Court, no change in the admission criteria may act to deny him his right to continue as a member of the bar. He asserts that his membership in the District Court's bar may only be revoked upon a finding of "unworthiness" or if he is "unfit" to be a member of the bar. In support of this argument, Gallo cites a previous opinion by this court, *Brown v. Smith (In re Poole )*, 222 F.3d 618 (9th Cir.2000). However, this case involved matters of representation that occurred before the amendments to the Local Rules. *Id.* at 621. As a result, the holding neither addressed nor ruled definitively upon the issues presented in this case.

In *In re Poole*, we affirmed that "a federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Id.* at 620 (internal quotation marks and citation omitted). We also stated that "[o]nce federal admission is secured, a change in circumstances underlying *state admission* ... is wholly negligible on the right to practice before a federal court." *Id.* (emphasis added) (internal quotation marks and citation omitted).

Unlike *In re Poole*, here we are asked to address the implications of a change in circumstance underlying *federal admission*. The holding in *In re Poole* does not address this issue. Moreover, it focused on the implications of disbarment from the federal bar as a result of disbarment from practicing before a state court. *Id.* (finding that "[w]hile a lawyer is admitted into a federal court by way of a state court, he is not automatically sent out of the federal court by the same route") (internal quotation marks and citations omitted). In light of the above, the holding of *In re Poole* is neither binding nor relevant to our analysis.

 Although the Local Rules promulgated by the District Court prior to 1999 allowed admission into the Arizona federal bar based on admission to federal bars located in other states, there is no guaranteed right to such admission. *Zambrano*, 885 F.2d at 1483. As discussed, *supra*, the District Court may revoke such admission if it is rationally related to a legitimate purpose. Moreover, it is well established that admission to a bar of a district court usually requires that the applicant be a member in good standing of the bar of a state's highest court. *Id.* Such a requirement is well within the District Court's rule making power and as established, *supra*, does not violate any constitutional right. *Giannini*, 911 F.2d at 359.

Absent any persuasive argument to the contrary, we therefore find that the District Court properly acted within its rule making authority under Section 2071 to alter its rules of local practice by requiring members to obtain membership in the State Bar of Arizona. Although the

amendment effectively terminated Gallo's membership in the bar of the District Court, such a result, though unfortunate, violates no constitutional or statutory provision. Moreover, he may qualify for general admission by joining the State Bar of Arizona or by appearing on a *pro hac vice* basis.

 We recognize that the *pro hac vice* option requires the attorney seeking such admission to associate with a member of the District Court bar who can sign the necessary court documents. This may be construed as burdensome for the attorney as well as expensive for the client. *Frazier v. Heebe*, 482 U.S. 641, 650–51, 107 S.Ct. 2607, 96 L.Ed.2d 557 (1987). Also, the decision to grant *pro hac vice* status is discretionary.[8] Nonetheless, we find these burdens insufficient to constitute grounds for mandating a federal bar to preserve the membership of attorneys who are not members of the bar of the associated state. Requiring either membership in the State Bar of Arizona or *pro hac vice* status is rationally tailored to serve the District Court's legitimate interest in regulating the conduct and ethical fitness of lawyers who practice before it. *Russell*, 275 F.3d at 820.

As set forth above, we find that applying the amended Rule 1.5 to Gallo is consistent with the District Court's fulfillment of its responsibilities. The court is unpersuaded by Gallo's argument that interpreting the Local Rules as did the District Court would result in a situation in which attorneys who gain admission to the District Court but let their Arizona state licenses lapse do not risk losing their licenses to practice before the District Court. This assertion is simply without merit, as the amended Local Rules specifically require that only attorneys in good standing with the Arizona State Bar may be members of the bar of the District Court.

 Gallo argues alternatively that the amended version of Rule 1.5 should apply only to new admissions occurring subsequent to its effective date. As set forth above, we recognize that some districts do include grandfather clauses. *See supra* discussion 16289–91. Although it was well within the authority of the District Court to enact such a clause, it is not required. In the absence of any grounds upon which to infer such an intent, we refrain from doing so. As the District Court noted, the language of Section 2071 states: "Such rule shall take effect upon the date specified by the prescribing court and shall have such effect on pending proceedings as the prescribing court may order." 28 U.S.C. § 2071(b). In contrast to this language allowing the District Court to prescribe rules as it sees fit, Gallo has presented no legal grounds for finding that the District Court erred in applying the amended Rule 1.5 to prohibit him from appearing generally before it.

### 4. Adequacy of Notice

 In his appeal, Gallo also argues that he did not receive proper notice of the consequences he would face as a result of the pertinent amendment to Rule 1.5. Be-

---

**8.** *But see In re Evans*, 524 F.2d 1004, 1007 (5th Cir.1975) (finding that "[a]n applicant for admission *pro hac vice* who is a member in good standing of a state bar may not be denied the privilege to appear except on a showing that in any legal matter, whether before the particular district court or in another jurisdiction, he has been guilty of unethical conduct of such a nature as to justify disbarment of a lawyer admitted generally to the bar of the court") (internal quotation marks and citations omitted); *U.S. v. Ries*, 100 F.3d 1469, 1472 (9th Cir.1996) (finding that "[i]n denying a pro hac vice application, the judge must articulate his reasons, for the benefit of the defendant and the reviewing court. [M]echanistic application of rules limiting such appearances is improper.") (internal quotation marks and citation omitted).

fore denying an attorney admission or re-admission to the bar of the District Court on the basis of character, due process requires that the District Court give the applicant notice, the reasons for its action, and an opportunity to respond. *In re Ruffalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). As we have repeatedly emphasized, all parties are in agreement that Gallo committed no act of misconduct that led to the decision of the District Court to terminate his license to practice generally before it. He has not been subjected to a disbarment proceeding, which we agree would trigger the need for a judicial determination of misconduct.

Section 2071(b) includes the following provision for notice: "Any rule prescribed by a court, other than the Supreme Court, under subsection (a) shall be prescribed only after giving appropriate public notice and an opportunity for comment." Accordingly, we find that the following actions taken by the District Court satisfy any due process requirements that may exist.[9]

On July 12, 1999, the District Court held hearings on the amendments to the Local Rules. Supplement to Record, at 4–6. After the adoption of the amendments, the District Court states that it promulgated notice via postings on its website, as well as through hard copy notices in its intake offices. The District Court also represented to this court that it sent mailings to out-of-state attorneys admitted prior to September 15, 1999, who had made an appearance and/or requested a certificate of good standing since that time. For a three-month period prior to enacting the amendments, the District Court maintains that notice of the amendments was included in footnotes placed on all cover sheets used to transmit orders and judgments issued in civil and criminal cases. Finally, in January 2000, the District Court made a presentation to the Federal Bar Association luncheon in Phoenix. At all times, the proposed amendments, and then the final rules, were available on the District Court's website.

In light of these actions, we do not agree with Gallo's assertion that all 6,796 attorneys should have received notice by U.S. mail.[10] There is no evidence that the amendment resulted from any specific disciplinary proceedings against any of the affected 6,796 attorneys.

Gallo also admits that prior to commencing an action in the District Court, he reviewed the Local Rules and thus had actual notice of the amendments. Moreover, the Attorney Admissions Clerk informed Gallo of his status in the August 30, 2000 letter. Finally, the District Court reviewed and considered the merits of Gallo's claims in his *Ex Parte* Application; it issued an order accordingly. The District Court's compliance with the opportunity for comment provision in Section 2071(b), its promulgation of notice of the amendments, the notice Gallo admits he received, and the opportunity for hearing that Gallo received from the District Court satisfy any due process requirements Gallo argues he deserves.

The above forms of notice notwithstanding, Gallo requests that we notify each active federal judge in the District Court of our decision. Appellant's Opening Brief ("AOB"), at 22–23. However, such notice is also unnecessary.

**5. Supervisory Power to Modify Local Rule 1.5**

 Gallo argues that because this court has plenary supervisory power over

---

**9.** See discussion, *supra*, Section 2.

**10.** Were this in fact a "mass disbarment," as characterized by Gallo, we might well be inclined to find otherwise.

the rules adopted by the District Court, we can alter or dispense with rules we find unconstitutional on their face or as applied. *Frazier*, 482 U.S. at 645–46, 107 S.Ct. 2607. This court's supervisory powers are generally exercised over rules implemented pursuant to Section 2071. *Russell*, 275 F.3d at 821. However, this power is not unbounded and may not be exercised absent a clear basis in fact and law. *Id.* (citing *United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir.1985)).

As discussed above, we reject Gallo's characterization of the District Court's enactment of the amendments as a revocation of his life tenure as a member of the bar. Moreover, as per our analysis of the constitutional implications of the District Court decision, we find that it was rationally related to a legitimate interest such that it passes constitutional scrutiny.

**AFFIRMED.**